At this time, we'll hear Reyes versus Lincoln Automotive Services. Thank you. Good morning. Good morning. May it please the court, my name is Yitzhak Zellman. I represent the appellant Alberto Reyes in this matter. Your Honor, there are two issues in this case. The first is whether a plaintiff under the TCPA can revoke his consent if that consent is memorialized in a contract versus in verbally or in some other form. And the second issue is whether my client, Mr. Reyes, proved in opposition to the motion for a summary judgment that he, in fact, revoked his consent. Look, as I read this record, it seems to me that you really didn't create a genuine issue of material fact with respect to mailing. What am I missing? Well, Your Honor, if you want to go straight to the second issue, which is the material issue of fact, at the deposition, my client testified that he wrote a letter to Lincoln, he had a copy of the letter, and he produced it at the deposition that's in the record at 839. It wasn't a copy of the letter he sent, it was just a copy, unsigned copy, right? It was an exact copy of the letter, and he testified at the deposition that he signed the copy he sent, he just keeps the unsigned copies for his records. But other than that, it's an exact copy. That letter says, I do not want you to call me anymore. But the letter didn't have an address, it had an incorrect account number on it, and at his deposition, he couldn't recall the circumstances of the mailing. In other words, he said he couldn't remember where it was mailed from. He couldn't remember to whom he mailed it. And then, when summary judgment rolls around, his recollection is different. Well, not different, Your Honor, actually. Because at his deposition, he testified the exact date he mailed this exact letter, and that was June 14, 2013. That's in his deposition testimony, Your Honor. And that's it. What you're saying is that he filled in the gaps rather than contradicted his prior position. Exactly, there's no direct contradiction between his affidavit at summary judgment and his deposition testimony. The only question here is whether a rational jury could find for your client on the facts that were presented by exercising their right to determine credibility and so forth. Well, that's the issue, Your Honor. That should be a jury determination, not the judge. And that's why we contend summary judgment should not have been granted in this instance. And again, that's what I'm trying to say, Your Honor, is that he testified the date he mailed it, and then he said at deposition, where did you mail it to? And he said, wherever my payments get mailed to, that's where I mailed it to. And he said, usually that's on the credit report. Now, he's in a deposition. He's in a conference room. He doesn't have all his records in front of him. He doesn't know the exact address where he mailed this to two years earlier. But at summary judgment- Why did he think he was in the deposition, just to talk about the weather? No, but he testified about the letter. He brought the letter. But they asked him, what specific address did you mail this to two years earlier? He didn't have that information. He said, wherever I mail my payments to, usually that's on the credit report. And then at summary judgment, his affidavit says, I mailed it to this address. That's where I mail my payments to. We actually submitted a copy of the invoice, which shows that address. We corroborated his testimony. So this court has held this past year in Dominic versus Order Parts, that when you have conflicting affidavits and summary judgment, I mean, and deposition testimony, the judge should not be picking between competing inferences or just cherry picking which- Was he represented at all times, or did he operate per se for a while here? He was represented by a different counsel during a deposition and up to I took over at middle of the summary judgment briefing. Right, so I wasn't there at deposition, but I have the transcripts that are in the record. Now, if that answers your question, Judge Parker, I just want to talk about the ability to revoke consent, because that was- At his deposition, he said he couldn't remember where he mailed the letter. And then in the affidavit, he says he remembers perfectly. Well, that's a contradiction. That's backing off from critical testimony in his deposition. And in the language that I'm looking at exactly, Your Honor, which is at 833 in the record, it says, do you have an address where you actually mail this to, sir? And, sir, everything gets mailed to Lincoln, wherever my payments were mailed to. Whatever address Lincoln had, that's usually on the credit report. Again, at the 833 in the record. And do you know that, or are you speculating? And, sir, I would remember where I mailed to on June 14th. Lincoln Credit, they have various addresses I wouldn't recall. But he did say, I would have mailed it to where I mail my payments. Now, that exact address, he didn't have at that time, but we provided it in his affidavit. And again, to corroborate that, just so we see, we're not pulling it out of some random spot. We gave the invoice showing that's where the address is actually listed on the invoice. And the invoice is in the record at 840 through 841. You can see, you can look at the affidavit, you can look at the invoice, the address is there. So, we don't believe it's contradictory at all, Your Honor. Since the defendant bargained by contract for the consent to call your client on the telephone, how come your client gets the unilateral ability to revoke a term of the contract? Well, Your Honor. I mean, they couldn't come and just take the car away, could they? because they leased it, they said you could drive it. They couldn't just revoke that consent because they make up their minds that they no longer like your client driving their car. Even though your client, by the way, wasn't paying for it. But Your Honor, if the issue is revocation of consent, that's not a TCPA revocation issue. He revoked his consent, and the FCC has made clear he can do that, as have a number of circuits, including the 3rd, 11th, and- Not in a contract situation, that's my problem. You have a, so they made it clear if the consent is given in an application, that's those cases. But once you get to the contract, is the question is whether the TCPA carries that, can in effect, you can imply that they said they would have, or that the act reaches this particular situation, and it doesn't expressly. There's nothing in it that says that even if the consent is revocable, that it can be revoked in connection with the contract. In fact, I think the TCPA is generally quiet about revocation. They're talking about giving a consent in the first place. But maybe you could address that. I mean, once you have a contract, that's a problem, it seems to me, for your side. Because are there terms of a contract that are not bargained for that don't count? And that's the question that we have to deal with. Well, Your Honor, but that would be a contract issue. If they want to sue my client for breach of contract, maybe they can do that. But in terms of whether revocation was okay or not, it was. The third circuit specifically said in Gager versus Dell Financial Services in 2013, the fact that Gager entered into a contractual relationship with Dell did not exempt Dell from TCPA requirements. As discussed above, she retained the right to revoke prior expressed consent. Was it in the contract? In that case, it was an application leading up to a contract. But the arguments made by the defendants in that case were the same exact arguments as made here. Specifically, they argued the basic principles of contract law should prohibit Gager from revoking her prior expressed consent. because Dell would want to know the level of contact that a credit applicant is consenting to in deciding whether or not to approve that application for credit. How much does your client owe Lincoln on this call? They counterclaim for, I believe, $25,000. Your Honor, that's in the record, the counterclaim, if you want to take a look at it. At what point did your client stop paying on his lease obligations? Does the record show that? Well, the defendant put some deposition testimony in their supplemental appendix about when he stopped. But it wasn't a stop as in like, here's my first month, I'm done. It was more, he fell on hard times. He made payments when he could, and the record in the deposition testimony talks about that. He made some payments, called up, tried to make some more payments. There was those discussions. It's not that he just said, you know what, I'm just going to try to give you my consent, run away, pull a shtick on you, and now profit off of the TCPA. This was not like that. People fall on hard times, they can't make their payments. If this hadn't- And it was like $25,000, is that what you're saying? $25,000, I believe, was left on the car, but I do believe they repossessed the car and sold it at auction, so I don't know what's still left. If this hadn't been on the contract, it seemed to me you'd have a much stronger case, right? I mean, there you'd have, these other cases would be more on point. They're not, we don't have anything in this circuit, I guess, but. But here it is, Your Honor. The FCC was expressly authorized by Congress to interpret and promulgate regulations under the TCPA. That's in 47 U.S.C. 227b2, and the FCC spoke to that. They said in 2015, we clarified that a call party may revoke consent at any time and through any reasonable means, a caller may not limit the manner in which revocation may occur. The FCC did not make the distinction that the defendant makes, which is, this only applies if there's no contract. If there's a contract, forget everything we just said. And the- So your position is that they could revoke, and then the other side might have a claim for breach of contract? Precisely. You can't just ignore our right of revocation, and that's exactly what the 11th Circuit in Osorio v. State Farm, Mink said. We took about 300 phone calls here, and you want $500 each. 530 phone calls, Your Honor, and that's just after he revoked consent. You said you want 530, and you want 500 each. The law provides for 500 up to $1,500 per call. No, that's what I'm asking. I would like $1,500 a call, Your Honor, but we're not at the damages phase. We're just here trying to reverse the district court's grant of summary judgment to the defendant. Thank you. You've observed rebuttal. There, yes, thank you, Your Honor. Good morning, Your Honors. Jessica Ellsworth on behalf of Ford Credit. The district court in this case correctly held that Reyes's legal theory was deficient, and that the factual record was too. Mr. Reyes. Let me ask you this. Suppose your client undertook to call this man every hour on the hour, did he have a right to stop that? Well, I think it's important to remember that in every contract- That's a hypothetical question. I understand that. I understand that. The position has to be yes, he did have the right to, I mean, no, he had no right to stop it. If robo calls every hour, under your theory, would be perfectly okay. Well, there is an implied covenant of good faith and fair dealing in every contract, so I think there would be some limitations on this consent term that might come from that. 500 calls after he attempted to revoke, if he did attempt to revoke? So just two points on that. One is that those 500 calls occurred over a period of more than roughly 18 months. So it is not anything remotely akin to calling every hour. And secondly, the document in the joint appendix that identifies the number of calls is not something that was submitted to the district court. It was placed into the appendix, but isn't actually part of the record that was before the district court. It post-states the summary judgment briefing by two months. Let me ask you this. If there hadn't been a contract here, what would your argument be? If there had not been any contract- If the consent was given verbally or was given in a separate piece of paper, say an application like Sager, what would your argument be? Then I think our argument would be the same thing that other courts of appeals have done and what the FCC has done, which is to look to the common law established meaning of consent. And that common law established meaning of consent, this is what actually Gager did in the Third Circuit. It's what the Eleventh Circuit did in the Osorio case. It's what the FCC did when it issued its ruling that's currently before the DC circuit. It said that section 892A of the second restatement of torts sets out the effects of consent. And in subsection five of that restatement provision and in comment I, there is a legal distinction drawn between traditional voluntary consent and contractual consent. You would say this would be voluntary consent under those circumstances. Under- It could be revoked. That's correct, your honor. And to clarify in Gager, there was no consent term in the contract or in the application. That was a situation in which the FCC has understood, and courts have understood, that consent can be inferred from the mere provision of a cell phone number in the course of a business transaction. This is a different case. It involves a consent provision. So your client, you're saying that it's in a contract and your client bargained for the right to call him as much as they wanted. And that was part of the, an integral part of the bargain. Our position, your honor, is that it's just like any other term in a contract. Courts aren't in the position of blue penciling contracts. They're not in the position of saying that some terms can be unilaterally revoked and others can't. Black letter contract law, which is consistent with restatement of torts. If the TCPA had wanted to, they could have abrogated this term. They could have, and that's important. The Mezzanotto case that we cite at page 26 of our brief makes clear that absent an indication from Congress that certain rights cannot be waived. Courts understand those rights to be waivable by private agreement of the parties. So, and it's clear in the TCPA in particular that the protections can be waived, because the whole premise of the statute is that consent gets you out of the TCPA. So it's your position that there are really no limitations on the frequency with which you can make these calls? Every hour, every half hour, 20 hours a day? Your honor, so two things to that. Again, I think there is an implied duty of good faith and fair dealing that would come into play. What does that mean in this context? If the calls were being made for purposes of harassment or to annoy the party. If they're being made for purposes of collection, it's also important to remember that while a company might choose to do that, Ford Credit views Mr. Reyes as their customer. So it is a hypothetical situation, but not one that my client would ever engage in, because we do maintain an ongoing customer relationship with individuals in our lease, lease our vehicles. If you get angry at your customer because he was driving your car without making the payments, you might get angry and no longer treat this person as a customer. Although I would assume that state law, barring harassment, would be a break on your ability to call every half hour. We think that's correct. Especially into the night. We think that's correct, your honor. And so we think this case does fall within the realm of Mezzanotto that talks about parties can contract around baseline statutory rights in a wide variety of contexts. This is one of them. The contract language governs here and for that reason the legal distinction between contractual consent and voluntary consent makes all of the difference. As the district court put it, Mr. Reyes is complaining about conduct that he expressly granted Ford Credit the opportunity to engage in when he signed the contract. And that's no different than any other term of the contract. Just as one party can't unilaterally turn, change the length of it, change the payment amount, change the requirement of who carries insurance, this contract provision is treated exactly the same way. I can briefly touch upon the factual deficiencies that also provide a basis for affirmance. The record at the summary judgment stage from Mr. Reyes' deposition consisted of an unsigned letter addressed to an entity that doesn't exist, Lincoln Credit, with an incorrect account number. And when Mr. Reyes was asked to where he had sent the letter, he said he wouldn't remember where he mailed it to on June 14th. You can see that at A33. The question was, do you have an address you actually mailed it to? He did say, though, that he sent it to the address that was on the invoice, right? Well, he said that he- He didn't have a copy of that address in front of him and- He didn't have that, but when he was asked, do you know that or are you speculating- That's really like a problem of lawyering right there. Your Honor, I think it's very important that when he was asked, do you know that or are you speculating, when he referred to where he sent his payments to, his answer was, I wouldn't remember where I mailed it to. So when given the opportunity to say, this is my standard practice, this is what I always do, to give some explanation, all he could say was that he wouldn't remember where he had mailed it to. And that is what this court has said. Parties can't correct- Problem of lawyering. Parties can't correct at the summary judgment stage with an affidavit. Thank you. Thank you, your honors. Your rebuttal. Thank you, your honor. Your honor, I just want to quickly address the waiver argument, which was raised by my adversary. And that's, if what Ford is saying is that by giving his consent in this contract without any other language, he has now waived his rights to revoke his consent under the TCPA, and now he's subject to as many clauses as Ford desires to make to him. You need to make that waiver clear. Well, there is state law that prevents people from harassing other people. I mean, I have a right to call my friends, I don't have a right to call them night and day. Right, but there's also a TCPA. And hang up, and breathe hard, and hang up. Right, but there's also a federal law which says, these are your rights. And what they're saying is essentially he waived those rights in this contract, but it doesn't say that in the contract. The contract is paragraph 43 of the lease agreement, and it just says you can call me with an auto dialer. There's nothing saying I waive my rights to revoke consent, I waive any of my rights under the TCPA. If you want to see what a waiver looks like- He has a right to keep people off his property, to keep them from trespassing. But he waives that in a contract, and he says, if you have a right to repossess my car, you can trespass on my property. You can go in, you can open up my garage, and take the car out. Now, what if he revoked that? Why can't he revoke it? He has a right under state law to keep people off his property. Can he revoke it? If he says, you can go, I waive my rights to keep you off my property, cool, but he has to express the waive. And that's what the Supreme Court and the New York Court of Appeals says. Almost everything he says, you can come and go on my property and take my car. Otherwise, people would be giving cars away for free. Right, but what I'm saying is that for it to constitute a waiver of your statutory rights, this court and the Court of Appeals has said it has to be unmistakable, unambiguous. It has to be a known right that you're relinquishing, and knowingly relinquish it. If you want to see what a waiver looks like, Your Honor, there's an arbitration agreement with a class waiver and that's assuming that there's statutory rights that apply here, where there is nothing expressed in the statute about this particular situation. If the statute had said, the TCPA said, you can revoke consent, whether given by agreement or not, and even if it's sworn to by 20 bishops, you can revoke, and then there would be the waiver issue. But here, there's nothing expressed about that. There's only the fact that you cannot, your consent is required and the cases have said you can revoke it under general circumstances. But there's nothing in the TCPA about revocation. Nothing in the TCPA about revocation, but the TCPA absolutely applies here because it's very broad and remedial based. It's any call made by any party to any person using any automated dialing system. The word any features prominently and repeatedly in the statute. So the fact is the TCPA does govern here. He does have statutory rights under the TCPA, and if you're going to say he's revoking that, there better be some language in there saying I'm revoking it, because without referring to the TCPA or his right of revocation, there could be no argument that he revoked it. And that's basically what the 11th Circuit said in State Farm, which was that absent contractual restrictions to the contrary, you can revoke your consent. There's nothing in paragraph 43 of this lease agreement, which is a contractual restriction against revoking his consent. It just says, you have my consent. It says nothing about the right of revocation, or if they want to say, you know what, you can revoke it, but you've got to mail it to this and this address, address to the revocation department. They can probably do something like that. But nobody, not the FCC, not any of the courts of appeals, including the Sixth Circuit, which I filed in a 28-J letter yesterday, has ever contemplated you can just foreclose all rights of revocation under the TCPA. Thank you. Thank you. Thank you, Your Honor. We'll reserve decision.